United States District Court
Southern District of New York

**ORIGINAL**

_____X

Barbara Benjamin

                Plaintiff,

    -against-

Mercy College

                Defendant,

_____

**10 CIV 03467**

JUDGE ROBINSON

**COMPLAINT**

Jury Trial Demanded

Plaintiff, Professor Barbara Benjamin ("Plaintiff" or "Professor Benjamin") by and through her attorney Joseph P. Carey, P.C., complaining of Mercy College ("Defendant" or "The College") respectfully alleges, upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1) This action is brought to remedy discrimination and harassment on the basis of age and retaliation in violation of the Age Discrimination in Employment Act of 1967, as amended, 29USC §216(b) ("ADEA"); discrimination and harassment on basis of age and retaliation in violation of the New York Executive Law §290, et seq. ("NYSHRL"); discrimination and harassment on the basis of gender and retaliation in violation of Title VII of the Civil Rights Law of 1964, as amended 42 USC §2000e-5; breach of contractional provisions contained in Mercy College Faculty Handbook dated 1996, and Mercy College Faculty Handbook dated 2009; as well as any other cause of action that can be inferred from the facts set forth herein.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____

1

2) Defendant's actions were unlawful and done with reckless indifference to Plaintiff Professor Benjamin's rights. Plaintiff brings this action for injunctive and declaratory relief, back pay, front pay, compensatory damages, punitive damages, attorney's fees, and other appropriate equitable and legal relief.

## JURISDICTION

3) Jurisdiction is invoked pursuant 28 USC §§1331, 1337, and 1367; 42USC §2000e-5. The supplemental jurisdiction of the Court, 28 USC §1367 is invoked over state causes of action.

## CONDITIONS PRECEDENT

4) Professor Benjamin filed a timely Charge of Discrimination against Defendant, alleging age, gender, and retaliation against Defendant Mercy College with the Equal Employment Opportunity Commission (the "EEOC") in or about June 25th 2009, complaining of the acts of discrimination and retaliation alleged herein within three hundred days of the acts of which she complains in EEOC Charge No. 520-200903758.

5) On or about March 14th 2010 Professor Benjamin received a Notice of Right To Sue informing her of her right to sue Defendant Mercy College in Federal Court. A copy of the Notice of Right To Sue is annexed hereto and made a part hereof as Exhibit "A". The ninety days to commence this action will expire on June 12th 2010.

6) The Complaint commencing this action was filed within ninety days of receipt of the Notice of Right To Sue.

## VENUE

7) Venue for this action in the Southern District of New York is proper under 28 USC §1391.

## PARTIES

2

8) Plaintiff Professor Benjamin was and is still a resident of the State of New York, County of Westchester.

9) Plaintiff Professor Benjamin is a seventy year old woman, having been born November 30th 1939.

10) Plaintiff Professor Benjamin at all times material herein, is a "person" entitled to protection within the meanings of the statutes enumerated in ¶3 herein.

11) Defendant Mercy College, on information and belief is a corporation existing under the laws of the State of New York with a principal place of business located at 555 Broadway Dobbs Ferry, Westchester County, New York 10522.

12) Defendant Mercy College, at all time material herein, is an "employer" within the meaning of the ADEA pursuant to §630(b); the NYSHRL under §292(5); and under Title VII of the Civil Rights Act 1964 (42 USC §2000e-5).

## FACTUAL ALLEGATIONS

13) Plaintiff Professor Benjamin was hired by Defendant Mercy College in September 1996, as an Adjunct Instructor to lead the team that launched the Master of Science In Organizational Leadership (MSOL) Program.

14) From September 2001 through May 2004, Plaintiff Professor Benjamin was working under a series of Contracts as a Professional Associate Faculty, not simply as an Adjunct. Pursuant to the 1996 Faculty Handbook service as a Professional Associate Faculty entails "… a full-time equivalent portion of a full faculty load".

15) From July 2004 to June 2006, Plaintiff Professor Benjamin served under a Administrative Contract. Plaintiff Professor Benjamin's first full-time core faculty multiple year Contract was issued by the Defendant College on September 1st 2006.

3

16) Professor Benjamin's Resume, was submitted in September 1996 to Thomas Milton, PhD, Chairman of the Division of Business and Accounting at Defendant Mercy College from June 1996 until October 2004.

17) Dr. Milton is the original Architect of the MSOL Program, which is multi-disciplinary and requiring instructors who have a broad background in many disciplines, including psychology, sociology, business, philosophy, and education. The College's instructors are drawn from all of these disciplines.

18) The students that enrolled in the MSOL are Nurses, Clergyman, Social Workers, Case Workers, Directors of nonprofit organizations, Educators, Entrepreneurs, Business Managers, and Executives, IT Managers, and Executives, Engineers, Law Enforcement personnel, and Military personnel.

19) Dr. Milton hired Professor Benjamin in September 1996 to lead the team that launched the MSOL because of her educational and professional background, which included doctoral studies in psychology and administration as well as extensive executive experience in business, education, and leadership development.

20) Before joining Mercy College in 1996 Professor Benjamin developed, produced and presented an eight-session multimedia leadership program for the National Technological University (NTU) (now a division of Walden University). The program was broadcast live to international corporations and to US Executive Departments and Government Agencies, including IBM, NASA, and the Department of Defense, on the NTU Satellite Network. Professor Benjamin was also a leadership consultant and executive mentor to Fortune 500 companies when she became an Adjunct Instructor and mentor in the MSOL at Mercy College.

21) Professor Benjamin's credentials and professional background aligned perfectly with the emerging needs of the Division of Business and Accounting, which was beginning an eight-year period of new program development, learning innovation, and outcomes assessment.

22) While Dr. Milton was Chairman of the Division of Business and Accounting, the College considered applying for accreditation by ACBSP, which provides mission-based accreditation for schools of business.

23) There are major financial concerns because accreditation requires the majority of Instructors to be full-time Professors. Currently the majority of Instructors are Adjuncts. One of the factors considered by the accrediting Board is whether or not the School applying for accreditation can afford to meet this and other financial criteria. Provost Sperling has expressed that it is "premature" to discuss the financial feasibility with the Faculty Committee on Economic and Fiscal Matters.

24) After a meeting of the Faculty of the School of Business with an expert, Dr. Biggs, on ACBSP accreditation, on April 13th 2010, Wayne Cioffari stated to Ben Manyindo and Professor Benjamin: "We will not go for any accreditation. We can't afford it. We have too many Adjuncts".

25) The Mercy College Board of Trustees has given no official approval for seeking accreditation.

26) Once accreditation is applied for, it will take 7-10 years to complete for AACSB accreditation.

27) In a meeting of the Faculty of the School of Business with an expert, Dr. Biggs. On ACBSP accreditation, on April 13, 2010, Dr. Biggs indicated that Mercy is at least four years away from being ready to begin the accreditation process. He explained that Mercy College does not have adequate student assessment in place to begin the accreditation process. Mercy will need to track and assess a freshman class through four (4) years to graduate and then track them for at least a year after graduation to have adequate assessment in place to begin an accreditation process. Consequently, the very earliest there can be a visitation from An ACBSP team begin an assessment process would be Fall 2014. After the initial visitation, it would take approximately 5 years to complete the accreditation process. That

would take actual accreditation out to approximately 2019. Dr. Biggs added that Mercy College would have to hire an Institute Researcher to keep track of the statistics and to adequately track students and report pertinent assessment statistics, such as average class size and student progress. For example, a rubric/portfolio assessment process would have to be put in place. According to Dr. Biggs, Mercy does not currently have such a process in place. Dr. Biggs suggested that, at this time, Mercy has to clarify its mission and develop assessment tools before it even begins to think about accreditation.

28) For either AACSB or ACBSP accreditation Faculty can be qualified either as:
    a) Professionally qualified (PQ)
    b) Academically qualified (AQ)

29) For either AACSB or ACBSP accreditation, a percentage of Faculty have to meet the PQ and/or AQ requirements.

30) Upon information and belief, ACBSP requires 70% of graduate courses to be taught by full time Faculty, which they call "participating Faculty," of which 50% or more must have a research doctoral degree (Ph.D.) in the field in which they teach. Currently less than 20% of business courses are taught by full time Faculty at Mercy College.

31) By email to all Faculty in the Division of Business and Accounting, dated February 19th 2008, Wayne Cioffari, as Acting Chairman of Business and Accounting on the subject of ACBSP - Resume Update, stated:

> "Since we do not meet the Doctoral
> Percent Requirements of the ACBSP,
> we feel that the Division will qualify
> under their heading of "Professionally
> Qualified"...short version—you work in
> the areas that you teach".

32) Upon information and belief the ACBSP Minimum qualifications provide that a Faculty member:

6

> "... must include a Masters Degree in a Field appropriate to the assigned Teaching responsibilities. An institution may make an exception to this minimum requirement only in emergency cases or special situations where the Faculty member has unique qualifications that meet a specialized need."

33) Plaintiff Professor Benjamin does not have a Masters Degree in a business field, but does fit the description of "special situations where a Faculty member has unique qualifications that meet a specialized need". Professor Benjamin was matriculated in a doctoral program and has twenty one credits of doctoral studies in administration and psychology.

34) Organizational Leadership is a new field of discipline. Plaintiff Professor Benjamin has been contributing to the development of a course of study over a period of years, and there was no existing Masters Degree Program in the discipline of Organizational Leadership when she began her research and development of the curriculum for the National Technological University (NTU) (now a Division of Walden University) and for the Defendant Mercy College.

35) No other Faculty member of the School of Business was given a termination contract, notwithstanding that they do not meet either the PQ or the AP requirements of AACSB or ACBSP accreditation.

36) In a meeting of the Faculty of the School of Business with an expert, Dr. Biggs, on ACBSP accreditation, on April 13th 2010, Dr. Biggs explained that ACBSP does not require everyone to have a PhD in their discipline. They are more concerned with teaching methods, processes, and outcomes.

Dr. Biggs also explained that ACBSP does not require that Faculty be discipline – specific in publishing and professional involvement. They are more concerned with issues related to most effective teaching methods. Professor Benjamin has published articles regarding effective teaching methods and been involved with

teaching training with Sloan-C, including the Sloan-C award for MSOL Online, related to teaching and delivery methods, not to organizational leadership.

37) Under Professor Benjamin's leadership the MSOL Program pointed the way toward designing and offering educational programs that meet ACBSP Standards. Unlike traditional accrediting agencies, ACBSP links the assessment process to <u>outcomes</u> instead of <u>input</u> measures (from "ACBSP Standards and Criteria for Demonstrating Excellence in Baccalaureate /Graduate Degree Schools and Programs - May 2008"). The core values of ACBSP are learning-centered education, leadership, continuous improvement and organizational learning, faculty and staff participation and development, partnership development, and design quality.

38) Thirteen years ago Professor Benjamin helped to create a new graduate program, the Master's of Science In Organizational Leadership (MSOL). She played a key development role in creating a learning-centered program that became the model in its field (core value of ACBSP). She also played a key leadership role in the program by teaching the first course in its Structured Sequence of Courses, and by setting high standards for her colleagues to follow (core value of ACBSP).

39) During the program's initial years Professor Benjamin helped to build a core of highly qualified faculty for MSOL Online by recruiting talented, successful people from corporations and nonprofit organizations, including eventually some graduates of the program (core value of ACBSP).

40) At the same time, Professor Benjamin was instrumental in designing the research project that forms the core of the program, producing guides for students and faculty, establishing standards, and sharing models of the project with students. She also designed grading rubrics for this project that established criteria for assessing the outcomes of the program (core value of ACBSP). After seven years of success with the program, Professor Benjamin worked with her colleagues in revising its curriculum to include new

8

developments in the field of leadership (core value of ACBSP), and again she played a leadership role by training faculty and helping them master the new content of their courses (core value of ACBSP).

41) In January 2004 Professor Benjamin developed a proposal for offering MSOL Online. The proposal included methodology, administration, marketing, and faculty to teach the program online. Working with the Dean of Online Learning, she prepared the documents for approval of MSOL Online by the New York State Department of Education, and sent them to Provost Melville, who filed them with New York State Department of Education. She recruited, hired, and trained faculty for MSOL Online, and launched the first cohort of students in the program in Fall 2004. She also worked with the Dean of Online Learning to redesign and rewrite the MSOL website (core value of ACBSP). At that time she began to develop partnerships with professional organizations to recruit students for the program, including the New York Police Department (NYPD) Sergeants Benevolent Association and Cobscook Community Learning Center (core value of ACBSP).

42) In December 2003, Dr. Milton suggested that Professor Benjamin take the title of Director of MSOL Online. Since Dr. Milton was still in his post as Co-Director, he agreed that Professor Benjamin be given the title of Associate Director, because it was his intention that, upon leaving as the Co-Director of the MSOL Program, Professor Benjamin would assume that title. At that time, Dr. Milton also indicated that he wanted Professor Benjamin to put the Executive Development and Growth Experience (hereinafter "EDGE") Online after the MSOL Online had been successfully launched. She agreed to do that.

43) In Fall 2005 Professor Benjamin's MSOL Online Program received the prestigious Sloan-C Award for Effective Practices in Building an Online Learning Community. She became a participant on the Sloan-C Teaching Training Committee. She also participated in Mercy distance learning faculty training programs (core value of ACBSP).

44) Since launching MSOL Online, Professor Benjamin has run three cohorts of students per year, most of whom she directly recruited. She has hired, trained, and evaluated faculty teaching in the MSOL Online Program and, in coordination with the Director of MSOL, reviewed and updated the curriculum (core value of ACBSP). She has also taught two MSOL Online courses per semester and mentored students in their research projects.

45) The MSOL Program contributes a gross margin of $1.8 million to the College, the highest contribution of any program in the School of Business, after the Undergraduate Business program. Its gross margin as a percent of net tuition is by far the highest of any program in the School of Business and among the highest in the College. The MSOL Online contributes about half of the program's revenues.

46) Upon information and belief Dean Mills has made a concerted effort to move the EDGE Online Program out of the School of Business, and place it under some other discipline. Such would be contrary to the existing New York State Education Department approval, in which the EDGE Online is registered as a Management Program.

47) Upon information and belief Dean Mills has also made a concerted effort to make major changes in the curriculum of the MSOL Program thereby turning it into a mini-MBA Program. Such would be contrary to the existing New York State Education Department approval for the MSOL Program.

48) In addition to her contributions to the School of Business, Professor Benjamin has made significant contributions to the College. She organized and led an advisory committee for one of the College's presidents, she built partnerships with professional and community organizations, and she taught graduate courses in the School of Education, namely EDU 506 Educational Evaluation and Assessment, and EDU 504 Cultural Prospective in the Teaching Learning Process.

49) In 2004, before leaving the post as Chairman of the Business and Accounting Division at Mercy College to become the Vice President for Enrollment

Management, Dr. Milton asked Professor Benjamin to prepare the undergraduate EDGE (BS in Organizational Management) for State approval so she could also run this program online. That included preparing all documents needed for applying for New York State Education Department (NYSED) approval of the EDGE Online. NYSED requires separate approval of any major change to a Program's venue, such as adding an online component. Documents that had to be prepared including updating curriculum of all courses and resumes for all proposed Faculty.

50) In January 2009 the Division of Business and Accounting became the School of Business. Until then Wayne Ciofarri was Acting Chairman of the Division of Business and Economics. Upon the promotion of Dr. Milton. Mr. Cioffari refused to allow the undergraduate EDGE Program to go forward. Wayne Cioffari was appointed Interim Dean but after Provost Melville cleared the EDGE Program to go forward Mr. Cioffari refused to allow Professor Benjamin to run the program. At a meeting with the new Acting Provost Joanne Passaro Mr. Cioffari, referring to his refusal to allow Plaintiff Professor Benjamin to be Co-Director of the EDGE Program, stated that he wanted "new blood" and gave the appointment of Co-Director EDGE Program to Fred Collett, a male faculty member. Thereafter responsibility for Director of the EDGE Program was given to Ben Manyindo, another male, who had no experience in running an online program, and was then a recent former student of Plaintiff Professor Benjamin at Mercy College.

51) When Dr. Milton left his position as Chairman of the Business and Accounting Division, he also left his position as Co-Director of the MSOL program. Before leaving as Chairman Dr. Milton indicated to Provost Melville that he wanted Professor Benjamin to take his place as Co-Director of MSOL, along with Benjamin Manyindo, who would replace Andrew Joppa, who was retiring as Co-Director of MSOL in January 2005.

52) In discussing the succession of Dr. Milton, Mr. Cioffari told a meeting of the business staff, in Professor Benjamin's absence, that Professor Benjamin was a **"TWIT"** and that he didn't need a **"TWIT"** as Co-Director of the MSOL. Professor

11

Benjamin was not appointed a Co-Director of the MSOL as Dr. Milton had promised her, and as was outlined in the email to Wayne Cioffari from the Co-Director of the MSOL, Andrew Joppa, in his memo dated February 3rd 2005.

53) In spring 2006 Professor Benjamin complained to Dr. Milton that she wanted to make a complaint to the Human Resources office against Mr. Cioffari about his behavior toward her. Dr. Milton warned Professor Benjamin of the possibility of retaliation by the College if she were to make such a complaint. Professor Benjamin instead asked HR to place a confidential complaint against Mr. Cioffari in her file, which was done in June 2006.

54) On September 30th 2008, as part of the recommendations required for applying for a multi-year contract, Dr. Milton wrote a recommendation for Professor Benjamin, which was praiseworthy and which has not been refuted by the College.

55) On May 19th 2005 Professor Benjamin submitted to the College, at the request of Mr. Cioffari, a proposal for the Bachelor of Science and Organizational Management Online (hereinafter "EDGE ONLINE") and defining her responsibility for its implementation. On March 21st 2006 Mr. Cioffari ordered Professor Benjamin to cease all of her activities regarding the EDGE Online Program and Professor Benjamin responded on the same date at 6:03P.M., with Cioffari's rebuttal of the same date at 10:11P.M. No explanation was given by Cioffari to Professor Benjamin for barring her from the EDGE Online Program after she had been instrumental in preparing the curriculum and the documents (sent to Provost Melville) that led to the College receiving New York State approval for the EDGE ONLINE.

## FIRST CLAIM AGAINST DEFENDANT
## (Age Discrimination and Harassment Under the ADEA)

56) Plaintiff Professor Benjamin repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

57) The ADEA prohibits discrimination in the terms conditions and privileges of employment on the basis of an individual's age.

58) Plaintiff Professor Benjamin at all relevant times herein was over sixty five years of age and as such is a member of a protected class.

59) Defendant College discriminated against Professor Benjamin in violation of the ADEA by:

>  a) Barring her without just cause from the position of Co-Director of the MSOL Program, for which she continues to be highly qualified, and contrary to the promises of Dr. Milton and Andrew Joppa, and but for her age, such barring would not have occurred, as evidenced by the Declaration of Sergeant Edward Mullins, President of the New York City Police Department Sergeant's Benevolent Association dated December 29th 2009. On behalf of the Defendant College Dean Geoffrey Mills declared to Sergeant Mullins, in words or substance, that Professor Benjamin was 71 years old and that it could not be expected that she would be able to continue her work at that age.
>
>  b) Barring her without just cause from the position of Co-Director of the EDGE Online Undergraduate Program, for which she continues to be highly qualified, and but for her age, such would not have occurred, as evidenced by the above mentioned Declaration of Sergeant Edward Mullins.

    c) Changing her contract status from that of multiyear to a one year termination contract, and but for her age such would not have occurred, as evidenced by the above mentioned Declaration of Sergeant Edward Mullins.

    d) Effective September 1st 2009 and continuing to date refusing to renew Plaintiff Professor Benjamin's Administrative Contract as Associate Director of MSOL Online without explanation, notwithstanding that Defendant College suffered to permit Plaintiff Professor Benjamin to continue to perform all of her administrative tasks, but without compensation, and but for retaliation such would not have occurred, as evidenced by the above mentioned Declaration of Sergeant Edward Mullins.

60) As a proximate cause of the College's discriminatory conduct as above described, the Plaintiff Professor Benjamin has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, mental anguish, emotional distress, humiliation, and loss of reputation.

61) Defendant College has acted intentionally and with malice and reckless indifference to Professor Benjamin's rights under the NYSHRL, and is thereby liable to Plaintiff Professor Benjamin for compensatory and punitive damages under the ADEA.

**SECOND CLAIM AGAINST DEFENDANT**

**(Age Discrimination and Harassment Under the NYSHRL)**

62) Plaintiff Professor Benjamin repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

63) The NYSHRL prohibits discrimination in terms, condition and privileges of employment on the basis of an individual's age.

64) Plaintiff Professor Benjamin at all relevant times herein was over sixty five years of age and as such is a member of a protected class.

65) Defendant College discriminated against Professor Benjamin in violation of the NYSHRL by:

    a) Barring her without just cause from the position of Co-Director of the MSOL Program, for which she continues to be highly qualified, and contrary to the promises of Dr. Milton and Andrew Joppa, and but for her age, such barring would not have occurred, as evidenced by the above mentioned Declaration of Sergeant Edward Mullins.

    b) Barring her without just cause from the position of Co-Director of the EDGE Online Undergraduate Program, for which she continues to be highly qualified, and but for her age, such would not have occurred, as evidenced by the above mentioned Declaration of Sergeant Edward Mullins.

    c) Changing her contract status from that of multiyear to a one year termination contract, and but for her age such would not have occurred, as evidenced by the above mentioned Declaration of Sergeant Edward Mullins.

    d) Effective September 1st 2009 and continuing to date refusing to renew Plaintiff Professor Benjamin's Administrative Contract as Associate Director of MSOL Online without explanation, notwithstanding that Defendant College suffered to permit Plaintiff Professor Benjamin to continue to perform

all of her administrative tasks, but without compensation, and but for retaliation such would not have occurred, as evidenced by the above mentioned Declaration of Sergeant Edward Mullins.

66) As a proximate cause of the College's discriminatory conduct as above described, the Plaintiff Professor Benjamin has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, mental anguish, emotional distress, humiliation, and loss of reputation.

67) Defendant College has acted intentionally and with malice and reckless indifference to Professor Benjamin's rights under the NYSHRL, and are thereby liable to Plaintiff Professor Benjamin for compensatory damages under the NYSHRL.

## THIRD CLAIM AGAINST DEFENDANT

### (Retaliation in Violation of the ADEA)

68) Plaintiff Professor Benjamin repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

69) The ADEA prohibits discrimination in the terms conditions and privileges of employment on the basis of an individual's age, and retaliation for opposing practices made unlawful by the ADEA.

70) Plaintiff Professor Benjamin at all relevant times herein was over sixty five years of age and as such is a member of a protected class.

71) Plaintiff Professor Benjamin complained to Defendant College about the harassment and discrimination she experienced and otherwise opposed practices made unlawful by the ADEA.

72) Defendant College retaliated against the Plaintiff Professor Benjamin in violation of the ADEA by:

    a) Barring her without just cause from the position of Co-Director of the MSOL Program, for which she continues to be highly qualified, and contrary to the promises of Dr. Milton and Andrew Joppa, and but for such retaliation, such barring would not have occurred, as evidenced by the above mentioned Declaration of Sergeant Edward Mullins.

    b) Barring her without just cause from the position of Co-Director of the EDGE Online Undergraduate Program, for which she continues to be highly qualified, and but for retaliation, such would not have occurred, as evidenced by the above mentioned Declaration of Sergeant Edward Mullins.

    c) Changing her contract status from that of multiyear to a one year termination contract, and but for retaliation, such would not have occurred, as evidenced by the above mentioned Declaration of Sergeant Edward Mullins.

    d) Effective September 1st 2009 and continuing to date refusing to renew Plaintiff Professor Benjamin's Administrative Contract as Associate Director of MSOL Online without explanation, notwithstanding that Defendant College suffered to permit Plaintiff Professor Benjamin to continue to perform all of her administrative tasks, but without